**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: October 9 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-30349 |
| | ) | |
| TMT Aero, Inc., | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 14-3157 |
| | ) | |
| Patti Baumgartner-Novak, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Race Engines Plus, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER
DENYING MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding is before the court on the court on Plaintiff's motion for summary judgment ("Motion") [Doc. # 18], Defendant's opposition [Doc. # 19], Plaintiff's reply [Doc. # 23], and Defendant's supplemental memorandum in opposition [Doc. # 27]. Plaintiff is the Chapter 7 trustee in the underlying bankruptcy case. In her complaint, she alleges that Debtor's prepetition transfer to Defendant of a security interest in its primary asset, a 1983 Beech BE-58 airplane, is avoidable as a fraudulent transfer

under 11 U.S.C. § 548(a) or a preferential transfer under 11 U.S.C. § 547(b).[1] In her Motion, Plaintiff seeks a determination that the transfer is avoidable under § 548 or, in the alternative, under § 547. Having considered the Motion and the memoranda in support of the parties's respective positions, for the reasons that follow, Plaintiff's Motion will be denied.

## FACTUAL BACKGROUND

The following facts are not in dispute. TMT Aero, Inc., Debtor in the underlying bankruptcy case, filed its petition for relief under Chapter 11 of the Bankruptcy Code on February 4, 2013.[2] [Case No. 13-30349]. On July 18, 2014, the case was converted to a case under Chapter 7. [*Id.*, Doc. # 108]. Jerry A. Marks, also known as Tony Marks, ("Marks") owns 100% of Debtor's equity interest. [*Id.*, Doc. # 1, p. 7/10]. Marks also owns 100% of the equity interest of TMT, Inc. and Tony Marks Equipment, Inc., both of which are currently Chapter 11 debtors in cases before this court. [Case No. 13-30346, Doc. # 1, p. 8/22; Case No. 13-30348, Doc. # 1, p. 7/10].

The only assets shown on Debtor's bankruptcy schedules are a 1983 Beech BE-58 Airplane ("the Airplane") and four Gordon Ray heaters, which Debtor valued at $55,120.25 and $8,237.59, respectively. [Case No. 13-30349, Doc. # 30, p. 6/22]. Debtor's Schedule B states that the values stated are the "net book value" of the assets, which he indicates is cost less depreciation. [*Id.*]. Brent Wilson, a licensed auctioneer in the state of Ohio, appraised the Airplane at a value of $75,000 as of November 26, 2014, "based on current market conditions." [Doc. # 24, ¶ 7 and attached Ex. F]. Proofs of claim for prepetition debts filed in Debtor's Chapter 7 case include unsecured claims filed by the Ohio Department of Taxation for a commercial activity tax ("CAT tax") for 2011 and through September 30, 2012 in the amount of $108,108.11, [Claim No. 7], and by the William Vaughan Company in the amount of $53,097.51 pursuant to a September 6, 2012, Joint and Several Judgment against Marks, TMT, Inc., Southpoint Business Park, LLC, TMT Leasing, LLC, Tony Marks Equipment, Inc., as well as Debtor, [Claim No. 3], and a secured claim filed by PNC Bank in the amount of $34,961.04 [Claim No. 4].

On January 15, 2013, approximately three weeks before the commencement of Debtor's bankruptcy case, a security agreement in the amount of $105,000 evidencing Debtor's transfer of an interest in the

---

[1] Plaintiff also alleges a claim under 11 U.S.C. § 502(d) to disallow any claim of Defendant. However, Defendant has not filed a proof of claim in the underlying bankruptcy case.

[2] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

2

Airplane in favor of Defendant ("the Transfer") was filed with the Federal Aviation Administration ("FAA"). [Doc. # 24, ¶ 8 and attached Ex. G; Amd. Complaint, ¶ 16; Amd. Answer, ¶ 11]. Defendant was not a creditor of Debtor at the time of the Transfer. [Amd. Complaint, ¶ 26; Amd. Answer, ¶ 21]. The security interest secured a debt owed to Defendant by Tony Marks. [Amd. Complaint, ¶¶ 27-28; Amd. Answer, ¶¶ 22-23].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id*.

### II. 11 U.S.C. § 548

Under §548, a trustee may avoid any transfer of an interest of the debtor in property that was made on or within two years before the date of the filing of the petition if the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation and "was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548(a)(1)(B). "For purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee. . . ." 11 U.S.C. § 548(d)(1).

In order to prevail on her fraudulent transfer claim, the Trustee must show that (1) Debtor had an

3

interest in the property transferred; (2) the Transfer occurred within two years of the date the petition was filed; and (3) the Transfer was constructively fraudulent in that it was made for less than a reasonably equivalent value *and* Debtor was insolvent when the Transfer was made or became insolvent as a result of the transfer. The Trustee bears the burden of proving the elements of a fraudulent transfer by a preponderance of the evidence. *Shapiro v. Matouk (In re Hayes)*, 322 B.R. 644, 646 (Bankr. E.D. Mich. 2005).

There is no dispute that the first two elements of Plaintiff's fraudulent conveyance claim are satisfied. Debtor owned the Airplane in which the security interest was granted to Defendant. And the security interest was properly perfected and, thus, pursuant to § 548(d), was transferred, on January 15, 2013, when it was filed for recording with the FAA. *See* 49 U.S.C. § 44108(a)[3]; *Armstrong v. State Bank of Towner (In re Gelking)*, 754 F.2d 778, 781 (8th Cir. 1984) (finding under § 44108 that the security interest in aircraft was perfected as of the date it was filed for recordation); *Solodky v. Traub, Butz & Fogerty and Dover Funding Corp. (In re Equip. Leassors of Pennsylvania),* 235 B.R. 361, 367 (E.D. Pa. 1999) (explaining that § 44108(a) measures perfection by the time of filing and not by the time of recording). There is also no dispute that Debtor received no consideration in exchange for the Transfer as the security interest was granted as security for a debt owed by Marks, not a debt owed by Debtor. However, Plaintiff has not met her burden of proving Debtor's insolvency at the time of, or as a result of, the Transfer.

The Bankruptcy Code defines insolvency with respect to a corporation in relevant part as follows: "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101(32)(A). Courts construe "fair valuation" to mean "the fair market value of the Debtor's assets and liabilities within a reasonable time of the transfer." *Ohio Corrugating Co. v. DAC, Inc. (In re Ohio Corrugating Co.)*, 91 B.R. 430, 436 (Bankr. N.D. Ohio 1988) (citing *Biden v. Foley*, 776 F.2d 379, 382 (1st Cir. 1985)); *see Hoffinger Indus., Inc. v. Leesa Bunch and McMasker Enter., Inc. (In re Hoffinger Indus., Inc.)*, 313 B.R. 812, 817 (Bankr. E.D. Ark. 2004) (fair valuation "means a fair

---

[3] Section 44108 provides:
(a) Validity before filing.--Until a conveyance, lease, or instrument executed for security purposes that may be recorded under section 44107(a)(1) or (2) of this title is filed for recording, the conveyance, lease, or instrument is valid only against--
    (1) the person making the conveyance, lease, or instrument;
    (2) that person's heirs and devisees; and
    (3) a person having actual notice of the conveyance, lease, or instrument.

49 U.S.C. § 44108.

market price that can be made available for payment of debts within a reasonable period of time"); *Hanrahan v. Waterman (In re Walterman Implement, Inc.)*, No. 05-07284, 2007 WL 2917260, at *2, 2007 Bankr. LEXIS 3323, *6 (Bankr. N.D. Iowa Oct. 5, 2007) ("Fair valuation is usually 'a fair market price ... within a reasonable period of time, [as between] a willing seller and a willing buyer'" (quoting *Am. Nat'l Bank & Trust Co. v. Boone*, 333 F.2d 984, 987 (8th Cir. 1964)).

As evidence of "fair valuation" of the Airplane, Plaintiff offers Debtor's bankruptcy Schedule B submitted by Marks under the penalty of perjury, which sets forth a value of $55,000, and the affidavit and November 26, 2014, appraisal of auctioneer Brent Wilson, which sets forth a value of $75,000. As evidence of the fair value of Debtor's liabilities at the time of the Transfer, Plaintiff relies upon Debtor's bankruptcy schedules showing unsecured debt in the approximate amount of $112,529 and secured debt in the approximate amount of $34,961. Plaintiff asks the court to take judicial notice of Debtor's bankruptcy schedules. In addition, Plaintiff offers a certified copy of the September 6, 2012, state court judgment in favor of the William Vaughn Company holding Debtor, Marks, and other related entities jointly and severally liable in the amount of $50,000, plus interest, costs, expenses and attorney fees and the proof of claim filed by the state of Ohio for CAT taxes due in 2011 and 2012 in the total amount of $108,108.11. Plaintiff then argues that based upon the value of the Airplane and liabilities owed by Debtor at the time of transferring the security interest to Defendant, Debtor was insolvent at the time of the Transfer.

Although Plaintiff also relies on Debtor's 2013 federal income tax return, which shows that it was operating at a loss, and Debtor's Statement of Financial Affairs filed in the underlying bankruptcy case that reports zero gross income in 2012 and in 2013 up to the filing date of its petition, these facts do not indicate insolvency as long as Debtor's assets were greater than its liabilities. *Jahn v. Fassnacht (In re A. Fassnacht & Sons, Inc.),* 826 F.2d 458, 462 (6th Cir. 19987) (explaining that "[e]ven though the company (1) was not paying all of its debts and (2) had net operating losses, these facts--standing alone--would not indicate insolvency as long as the company assets were greater than its liabilities.").

**A. Debtor's Assets**[4]

Regarding Plaintiff's evidence of the value of the Airplane and citing Rule 56(c)(2), Defendant argues that statements of value found in Debtor's bankruptcy Schedule B are inadmissible hearsay that the court cannot consider. Rule 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P.

---

[4] The court notes, to the extent it may become relevant, that Plaintiff's insolvency argument focuses only on the Airplane as an asset of Debtor's and does not address the value of Debtor's four Gordon Ray Heaters.

5

56(c)(2). Thus, "the objection contemplated under Rule 56 as amended [in 2010] is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Martin v. Performance Boat Brokerage.com, LLC*, 973 F. Supp. 2d 820, 824 (W.D. Tenn. 2013); *see Obnamia v. Shinseki*, No. 11-1204, 2013 WL 5408267, *2, 2013 U.S. Dist. LEXIS 137621, *5 n.1 (S.D. Ohio Sept. 25, 2013) (explaining that subject to the opposing party's objection, Rule 56 "allows a party making or opposing a summary judgment motion to cite to materials in the record, whether authenticated or not"). Defendant does not object that the statements of value set forth in Debtor's schedules cannot be submitted in admissible form.

While it is true that statements in an affidavit or declaration, such as Debtor's bankruptcy schedules, may be inadmissible hearsay at trial, on summary judgment, Rule 56 contemplates consideration of facts set forth in an affidavit or declaration made under penalty of perjury that would otherwise be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(4). The reported cases cited by Defendant in support of its argument do not persuade the court otherwise as each involved a determination regarding admissibility in connection with a trial or evidentiary hearing. *See Leslie v. Leslie (In re Leslie)*, 181 B.R. 317 (Bankr. N.D. Ohio 1995)(trial); *In re Harmony Holdings, LLC*, 393 B.R. 409 (D.S.C. 2008)(evidentiary hearing); *Manix Energy, Ltd. v. James (In re James)*, 300 B.R. 890 (Bankr. W.D. Tex. 2003)(ruling on motion to take judicial notice and receive documents into evidence); *Annis v. First State Bank of Joplin (In re Annis)*, 78 B.R. 962 (Bankr. W.D. Mo. 1987) (trial); *see also French v. Diller (In re Stauffer)*, No. 92-3313, 1994 WL 115914, 1994 Bankr. LEXIS 394 (Bankr. N.D. Ohio Mar. 24, 1994)(trial).

Although Plaintiff has not included copies of Debtor's bankruptcy schedules in support of her Motion, as noted earlier, the court finds it proper to take judicial notice, as requested by Plaintiff, of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it). The statements of value on Schedule B were made by Marks, Debtor's sole shareholder and president, under penalty of perjury. *See Mason v. Springleaf Fin'l Servs. of Ohio, Inc. (In re Benavides)*, No. 12-6002, 2012 WL 22029993, *3, 2012 Bankr. LEXIS 2726, *7-8 (Bankr. N.D. Ohio June 14, 2012) (on summary judgment, accepting as evidence Debtor's valuation submitted under the pains and penalty of perjury in his bankruptcy schedules). While the court notes that under certain circumstances, the opinion of value of corporate property by a corporate officer such as Marks may be admissible evidence of value, *see Ohio Envtl. Dev. Ltd P'ship v. Envirotest Sys. Corp.*, 478 F. Supp 2d 963, 977 (stating that "an officer, or shareholder of a closely held corporation who has

acquired knowledge of the corporate property tantamount to that of an owner by virtue of having purchased, or dealt with, the property as if he were the individual owner may testify as to its value"), Schedule B specifically states that the value set forth with respect to the Airplane is the book value. The court finds this evidence of value insufficient to support a "fair valuation" determination, which, as stated above, is a fair market determination for purposes of the insolvency prong of Plaintiff's § 548 claim. *See Hunter v. Sylvester Material Co. (In re Turkeyfoot Concrete, Inc.)*, 198 B.R. 506, 510 (Bankr. N.D. Ohio 1996) (rejecting use of book value as shown on Debtor's schedules in insolvency determination because it "does not likely bear any relation to the asset's fair market value"); *Lain v. Universal Drywall LLC (In re Erickson Ret. Cmtys., LLC)*, 497 B.R. 504, 513 (Bankr. N.D. Tex. 2013) (stating that book values "often bear no relationship to actual market values").

Plaintiff also offers Wilson's affidavit and appraisal of the Airplane in the amount of $75,000 as of November 26, 2014. However, Wilson's affidavit states only that he is a licensed auctioneer and the owner of Wilson Auction & Realty Co., Ltd and that the attached exhibit is a true and accurate copy of his appraisal of the Airplane. It fails to set forth facts showing that he is competent to testify regarding the value of the Airplane. *See* Fed. R. Civ. P. 56(c)(4) (providing that an affidavit must "show that the affiant . . . is competent to testify on the matters stated). Furthermore, as Defendant correctly argues, a fair valuation must be determined at or within a reasonable time of the Transfer. *Ohio Corrugating Co.,* 91 B.R. at 436. Wilson's appraisal sets forth his determination of fair market value as of November 26, 2014, nearly two years after the Transfer. Plaintiff offers no basis for finding the appraisal to be a fair valuation of the Airplane on January 15, 2013, the date of the Transfer.

**B. Debtor's Liabilities**

As evidence of Debtor's liabilities, Plaintiff initially relies on Debtor's bankruptcy schedules, which show unsecured debt of approximately $112,529 and secured debt of approximately $34,961. However, even if the court can properly consider statements in Debtor's schedules regarding debts owed on the date of filing, *see Lain*, 497 B.R. at 514 and n.43, the schedules alone are insufficient to show liabilities of Debtor at the time of the Transfer as there is no indication in the schedules as to when those debts were incurred. Furthermore, as Defendant argues, Debtor's Schedule F indicates that the $37,000 claim of the City of Napoleon is disputed, thus raising an issue as to whether that amount is actually owed.

Defendant also argues that Plaintiff's reliance on the State of Ohio's proof of claim filed in the underlying bankruptcy case for CAT taxes in the total amount of $108,108.11 is misplaced. CAT taxes are

7

imposed in Ohio pursuant to Chapter 5751 of the Ohio Revised Code.[5] Section 5751.01 sets forth definitions of terms used in Chapter 5751. It defines "person" to include corporations and "taxpayer" as "any person, or any group of persons in the case of a . . . combined taxpayer treated as one taxpayer, required to register or pay tax under this chapter. 'Taxpayer' does not include excluded persons." Ohio Rev. Code § 5751.01(A) & (D). "Excluded person" is defined to mean, among other things, "any person with not more than one hundred fifty thousand dollars of taxable gross receipts during the calendar year." Ohio Rev. Code § 5751.01(E)(1). While Plaintiff does not dispute that Debtor had less than $150,000 of gross receipts, she contends that Debtor is still obligated to pay the tax as part of a combined taxpayer group under § 5751.012.[6]

> Ohio Revised Code § 5751.012 provides as follows:
>
> (A)   All persons, *other than persons enumerated in divisions (E)(2) to (10) of section 5751.01* of the Revised Code, having more than fifty per cent of the value of their ownership interest owned or controlled, directly or constructively through related interests, by common owners during all or any portion of the tax period, together with the common owners, shall be members of a combined taxpayer group if those persons are not members of a consolidated elected taxpayer group pursuant to an election under section 5751.011 of the Revised Code.
>
> (B)   A combined taxpayer group shall register, file returns, and pay taxes under this chapter as a single taxpayer and shall neither exclude taxable gross receipts between its members nor from others that are not members.

Ohio Rev. Code § 5751.012 (emphasis added).

Defendant does not dispute that Debtor would otherwise qualify as a member of a combined taxpayer group but argues that it is not part of such a group and is not responsible for the CAT tax set forth in the State of Ohio's proof of claim because it had gross receipts of less than $150,000 and is therefore an "excluded person" under § 5751.01(E)(1). Defendant's argument is not well taken.

Persons described in § 5751.01(E)(1) are specifically not excluded under § 5751.012 as persons that are members of a combined taxpayer group. The only requirement for such membership is the provision relating to the common ownership interest with other members of the group. Marks is a common owner of Debtor, Tony Marks Equipment, Inc., and TMT, Inc., being a 100% shareholder of each company. The

---

[5] The provisions of Chapter 5751 referred to in this opinion were amended after January 15, 2013, the date of the Transfer. All references to those provisions are to the statutes that were in effect on the date of the Transfer.

[6] Although Plaintiff had filed an objection to that proof of claim based on the fact that Debtor did not generate any income in 2011 and 2012, the objection has been withdrawn. [Case No. 13-30349, Doc. ## 159 & 166].

8

Ohio Administrative Code addresses excluded persons with respect to combined taxpayer groups as follows:

> A combined taxpayer group exists pursuant to the requirements of section 5751.012 of the Revised Code. This group is not formed by an election. Accordingly, if the group's *total taxable receipts* are below one hundred fifty thousand dollars, such group is not required to register or pay the flat (minimum) tax.

Ohio Admin. Code § 5703-29-04(B)(1)(emphasis added). Both the definition of "taxpayer" under § 5751.01(D) and the Ohio Administrative Code make clear that a combined taxpayer group is treated as one taxpayer. Under Ohio law, all members of a combined taxpayer group are jointly and severally liable for the CAT tax owed. Ohio Rev. Code § 5751.014. Thus, the amount of Debtor's individual gross receipts is irrelevant as to its liability to pay the CAT taxes owed.

Defendant also argues that debts for which Debtor is jointly and severally liable, which include not only the CAT taxes but also the William Vaughan Company judgment, must be discounted as contingent liabilities in an insolvency determination. A contingent liability is defined as, "'One which is not now fixed and absolute, but which will become so in the case of the occurrence of some future and uncertain event.'" *Chrysler Corp. v. Ford Motor Co.,* 972 F. Supp. 1097, 1108-09 (E.D. Mich. 1997) (quoting Black's Law Dictionary, 321 (6th Ed.1990)). Because it is uncertain whether a contingent liability will ever become an actual liability, courts have recognized that in order to value such a liability, "it is necessary to discount it by the probability that the contingency will occur and the liability become real." *Baldi v. Samuel Son & Co.*, 548 F.3d 579, 582 (7th Cir. 2008) (quoting *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 200 (7th Cir. 1988)).

Debtor's joint and several liability for the CAT taxes and the William Vaughan Company judgment however, were not contingent on any future and uncertain event at the time of the Transfer. The taxes had been incurred and the judgment had been entered before the Transfer occurred. Where parties are jointly and severally liable, "each of them, individually, has the duty of fully performing the obligation. . . ." Black's Law Dictionary, 837 (6th Ed. 1990).

Nevertheless, the court finds the Seventh Circuit's opinion in *Paloian v. LaSalle Bank, N.A.*, 619 F.3d 688 (7th Cir. 2010), persuasive as to what is required in valuing the Debtor's assets and liabilities where joint and several liabilities exist. At issue in *Paloian* was the proper way to value an $18.5 million liability of the debtor hospital, which was owned and controlled by James Desnick, for submitting excessive claims for Medicare and Medicaid payments. *Id.* at 689, 693. The Court of Appeals rejected the bankruptcy court's insolvency determination, finding a "glaring error" in the court's failure to include the value of the hospital's contribution claim against Desnick as an asset of the hospital in the insolvency

9

equation. *Id.* at 693. The Court of Appeals explained:

> The missing asset was Desnick's wealth. If Desnick caused the hospital to submit excessive claims for federal payments, then he and the Hospital were jointly and severally liable for restitution. So if $18.5 million goes on the liability side of the Hospital's balance sheet, the asset side must contain an estimate (as of [the date the allegedly fraudulent transfers began]) of how much Desnick would chip in, either directly or via contribution or indemnity (for, if the Hospital paid, then it would have a claim against Desnick).

*Id.*

Similarly, in *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635 (3d Cir. 1991), the Third Circuit Court of Appeals explained that "[i]n valuing the cost of [the debtor's] guarantee, the right of contribution from co-guarantors needs to be balanced against the amount of debt for which [the debtor] is liable" and that "the value of the guaranty . . . must be reduced to the extent contribution was available." *Id.* at 648. It held that a determination of the debtor's insolvency could not be made in the absence of proof of, among other things, the value of the debtor's rights to contribution. *Id.* at 649.

Applying these principles in this case, and in addition to the lack of probative evidence regarding the value of the Airplane, the court finds that Plaintiff's evidence of insolvency is deficient in light of the absence of any evidence regarding the value of contribution claims Debtor would have had at the time of the Transfer against co-obligors. Whether such value is considered an asset of Debtor's at the time of the Transfer as explained in *Paloian*, or an amount by which the value of the liability is discounted, as explained in *Mellon Bank*, evidence of the value of any contribution claim that existed at the time of the Transfer is necessary in making an insolvency determination.

For the foregoing reasons, the court finds that genuine issues for trial exist with respect to whether Debtor was insolvent when the Transfer was made such that Plaintiff is not entitled to judgment as a matter of law on her § 548 claim.

## II. 11 U.S.C. § 547

Plaintiff also argues that she is entitled summary judgment on her preference claim under § 547(b).

That Debtor was insolvent when the Transfer was made is also an element of a § 547(b) claim. *See* 11 U.S.C. § 547(b)(3). However, the insolvency element of her § 547 claim is subject to a different analysis than the insolvency element of her § 548 claim because, under § 547, she has the benefit of a statutory presumption of insolvency on and during the 90 days preceding the filing of the petition that she does not have under § 548. 11 U.S.C. § 547(f). That time period includes the date of the Transfer.

Nevertheless, in order to prevail on a § 547(b) claim, Plaintiff also must prove, among other things, that the Transfer was made "to or for the benefit of a creditor" and "for or on account of an antecedent debt

10

owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(1) & (2). The Trustee presented no evidence that Defendant was a creditor of Debtor or that the Transfer was on account of an antecedent debt owed by Debtor. Rather, she contends, and Defendant does not dispute, that Defendant was a creditor of Marks and was never a creditor of Debtor. [*See* Doc. # 18, p. 1; *see also* Amd. Complaint, ¶ 26; Amd. Answer, ¶ 21]. Thus, Defendant would be entitled to judgment as a matter of law as there appears to be no genuine issue for trial on these two elements of Plaintiff's claim.

Although Defendant has not so moved, the court may grant summary judgment to a nonmovant "[a]fter giving notice and an opportunity to respond." Fed. R. Civ. P. 56(f); Fed. R. Bankr. P. 7056. The court will therefore grant Defendant summary judgment on Plaintiff's § 547(b) claim absent a timely response filed by Plaintiff showing that a genuine issue does exist.

**THEREFORE,** for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 18] be, and hereby is, **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff must file a response, if any, as discussed above, on or before **October 23, 2015,** absent which the court will grant Defendant summary judgment on Plaintiff's claim brought under 11 U.S.C. § 547(b).

###